**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**LAVAUGHN WEATHERLY,**

     **Petitioner,**

**v.**                            **Case No.  3:15cv365-LC/CAS**

**JULIE L. JONES, Secretary,
Department of Corrections,**

     **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On August 12, 2015, Petitioner, LaVaughn Weatherly, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1.  An amended petition was filed on March 15, 2016, pursuant to order of the court, along with an amended memorandum of law.  ECF Nos. 16, 17, 18.  The respondent filed a motion for more definite statement on March 24, 2016, seeking a more specific argument and clarification regarding certain of Petitioner's claims.  ECF No. 19.  Petitioner was directed to file a second amended petition, ECF No. 20, which he did on April 15, 2016.  ECF No. 21.  Respondent filed an answer to the second amended petition, along with exhibits, on May 2, 2016.  ECF No. 22.

On June 6, 2016, Petitioner filed a motion for appointment of counsel, motion for extension of time, and motion to amend petition.  *See* ECF Nos. 25, 26, 27.  Appointment of counsel was denied on June 30, 2016.  ECF No. 28.  Petitioner's motion to amend was granted and Petitioner was directed to file a third amended petition.  ECF No. 29.  Petitioner filed his Third Amended Petition for writ of habeas corpus with exhibits on September 1, 2016.  ECF No. 33.  Respondent filed an answer to the third amended petition on April 11, 2017.  ECF No. 44.

On June 9, 2017, Petitioner filed a motion to supplement the record with a copy of the victim's medical examination, which he indicated was received in discovery but was not part of the record on appeal, and a CD containing Petitioner's partial confession, which he stated was in the record on direct appeal but was not transcribed.  ECF No. 48.  The court denied the motion without prejudice subject to determining during review of the claims made in this proceeding whether supplementation is required.  ECF No. 50.  Petitioner's reply to Respondent's answer was filed with an appendix on June 13, 2017.  ECF No. 49.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration

Case 3:15-cv-00365-LC-CAS   Document 51   Filed 07/31/17   Page 3 of 60

Page **3** of **60**

of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

Petitioner's motion to supplement the record with a medical report and a CD of Petitioner's statement to police should be denied as the items sought to be supplemented are unnecessary for the disposition of these claims.

## Background and Procedural History

Petitioner was charged by Information filed in Santa Rosa County on March 8, 2010, with six counts: **Counts 1**, capital sexual battery on a child less than 12 years of age by a person age 18 or older while in a position of familial or custodial authority, by vaginal penetration with defendant's fingers, between May 22, 2006, and May 21, 2008, in violation of sections 794.011(2)(a) and 794.011(8)(c), Florida Statutes; **Count 2**, capital sexual battery on a child age 10-11 years of age, by a person age 18 or older while in a position of familial or custodial authority, by vaginal penetration with defendant's fingers between May 22, 2006, and May 21, 2008, in violation of sections 794.011(2)(a) and 794.011(8)(c), Florida Statutes;

**Count 3**, sexual battery of a child 12 years of age but less than 18, by a person age 18 or older while in a position of familial or custodial authority, by vaginal penetration with defendants fingers, in violation of section 794.011(8)(b), Florida Statutes; **Count 4**, lewd or lascivious molestation by a person age 18 or older, by touching the breasts, genitals, genital area, or buttocks, or clothing covering them, of a child 10-11 years of age, between May 22, 2006, and May 21, 2008, in violation of section 800.04(5)(b), Florida Statutes; **Count 5**, lewd or lascivious molestation of a child 10-11 years of age, by a person age 18 or older, between May 22, 2006, and May 21, 2008, by touching the breasts, genitals, genital area, or buttocks, or clothing covering them, or forcing or enticing the victim to touch the perpetrator, in violation of section 800.04(5)(b), Florida Statutes; and **Count 6**, lewd or lascivious molestation of a child 12 years of age or older but less than 16 years of age, by a person age 18 or older, by touching the breasts, genitals, genital area, or buttocks, or clothing covering them, or forcing or enticing the victim to touch the perpetrator, between May 22, 2008, and February 1, 2010, in violation of section 800.04(5)(c)(2), Florida Statutes.  Ex. A at 10-11.[1]

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through O submitted in conjunction with Respondent's answer to the second amended petition. *See* ECF No. 22.

After the State filed a notice of intent to offer evidence of other

crimes, wrongs, or acts pursuant to section 90.404, Florida Statutes, Ex. A

at 13-14, Petitioner entered into a written, negotiated plea agreement and

entered pleas of nolo contendere at a hearing held June 1, 2010.  Ex. A at

15-19, Ex. B.  Petitioner pled nolo contendere to the lesser included

offenses of attempted capital sexual battery as to Counts 1 and 2, and pled

nolo contendere to Counts 3 through 6 as charged.  *Id.*  At the entry of the

pleas, Petitioner was asked if he did in fact commit the crimes, to which he

answered, "Yes, sir."  Ex. B at 8.  Petitioner was sentenced to concurrent

30-year terms on Counts 1 through 5 and to a consecutive term of 15 years

on Count 6, with life probation upon release from Counts 3 and 4.  Ex. A at

15-19, 22-28, 33-39; Ex. B.  Petitioner was designated as a Sexual

Predator pursuant to section 775.21, Florida Statutes.  Ex. A at 30-31;

Ex. B.

Petitioner appealed to the First District Court of Appeal, with counsel

filing an Anders[2] brief indicating that no good faith argument of reversible

error could be made.  Ex. C.  Petitioner also filed a pro se brief contending

his plea was not voluntary because he had been in a fragile mental state

---

[2] Anders v. California, 386 U.S. 738 (1967).

when he signed the plea agreement due to his wife being present at the hearing.  Ex. D.  The First District Court of Appeal affirmed per curiam without written opinion on February 11, 2011.  Ex. E.  The mandate was issued on March 9, 2011.  Ex. E.  *See* Weatherly v. State, 54 So. 3d 496 (Fla. 1st DCA 2011) (table).  Petitioner filed a pro se motion to mitigate sentence on April 1, 2011, pursuant to Rule 3.800(c), citing as grounds his cooperation.  Ex. F-1.  After the motion was stricken for lack of signature on April 5, 2011, Petitioner filed another Rule 3.800(c) motion, which was denied by order entered April 19, 2011.  *Id.*

Petitioner filed a pro se motion for post-conviction relief in the trial court on March 5, 2012.  Ex. F-2 at 44-56.  This motion was stricken as facially insufficient, but Petitioner was given leave to amend.  Ex. F-2 at 57-60.  Petitioner filed an amended Rule 3.850 motion on May 7, 2012, raising seven grounds for relief.[3]  F-2 at 61-96.  An evidentiary hearing was

---

[3] The claims raised in Petitioner's amended Rule 3.850 motion were: (1) newly discovered evidence of victim recantation requires withdrawal of the plea and vacating the convictions and sentences, Ex. F-2 at 66. 79; (2) involuntary plea due to insufficient plea colloquy to disclose Petitioner's lack of understanding of the charges, *Id.* at 67, 81; (3) involuntary plea due to coercion of prosecution by threats to withdraw plea offer if further discovery was done, *Id.* at 68, 85; (4) ineffective assistance of counsel (IAC) for failing to obtain a second deposition of the victim and for misadvising Petitioner about that deposition, *Id.* at 69, 87; (5) IAC in misadvising Petitioner about viable defenses based on elements of the crimes charged, resulting in an involuntary plea, *Id.* at 70, 89; (6) IAC in failing to file a motion to suppress coerced statements, resulting in an involuntary plea, *Id.* at 71, 91; and (7) IAC in counsel's coercion of Petitioner to sign a plea agreement or "go straight to trial" later that month, *Id.* at 72, 92.

granted on grounds one, five, and seven of the amended motion.  Ex. F-2 at 118-20.  The evidentiary hearing was held on November 12, 2013, and March 5, 2014.  Ex. F-2 at 160-215, 239-285.  Post-conviction relief on all grounds was denied by order rendered April 28, 2-14.  Ex. G at 286-343.

Petitioner appealed the denial of post-conviction relief to the state First District Court of Appeal and full briefing ensued.[4]  *See* Ex. I, Ex. J, Ex. K.  The appellate court affirmed per curiam without written opinion, and denied rehearing and clarification.  Exs. L, M.  The mandate was issued on August 19, 2015.  Ex. N.  *See* Weatherly v. State, 171 So. 3d 708 (Fla. 1st DCA 2015) (table).

While that appeal was pending, Petitioner filed a second, successive pro se Rule 3.850 motion on July 9, 2015, raising two grounds.[5]  Ex. O. The successive motion was filed less than one month before Petitioner filed

---

[4] The claims raised on appeal from denial of Petitioner's initial Rule 3.850 motion were: (1) error in denial of motion to vacate based on victim's recantation; (2) denial of ineffective assistance of counsel (IAC) claim due to misadvice of no viable defense; (3) denial of IAC claim re failure to move to suppress; (4) involuntary plea due to coercion by counsel's misadvice regarding defense; and (5) IAC of post-conviction counsel by failure to prepare, including failure to raise issue of medical examination. Ex. I.

[5] The claims raised in Petitioner's successive Rule 3.850 motion were: (1) newly discovered evidence claim consisting of trial counsel's testimony at the evidentiary hearing on the first Rule 3.850 motion that trial counsel conducted no investigation into the victim's medical examination, which evidence was favorable to the defense; and (2) claim that the plea was involuntary due to trial counsel's ineffective representation based on newly discovered evidence that she did not investigate the victim's medical examination.  Ex. O.

his petition for writ of habeas corpus in this court.  The record does not

contain any ruling on the successive motion or the result of any state

appeal from any ruling on that motion.

Petitioner filed his third amended petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in this Court raising the following five grounds

for relief:

> (1) The post-conviction court erred and violated Petitioner's Fifth and Fourteenth Amendment rights by denying Petitioner's victim recantation claim, a decision that is an unreasonable determination of the facts in light of the evidence presented.  ECF No. 33 at 4.

> (2) Trial counsel rendered ineffective assistance by failing to investigate or inform Petitioner of a favorable and plausible defense, resulting in a violation of Petitioner's constitutional rights and an involuntary plea.  ECF No. 33 at 6.

> (3) Trial counsel rendered ineffective assistance by failing to file a motion to suppress Petitioner's arrest statement as involuntary, and by failing to inform Petitioner of this defense. ECF No. 33 at 7.

> (4) Trial counsel rendered ineffective assistance by misadvising Petitioner concerning deposing the victim and by failing to conduct that deposition.  ECF No. 33 at 9.

> (5) Post-conviction counsel rendered ineffective assistance in the post-conviction proceeding.  ECF No. 33 at 10.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . .  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' "  Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)). In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)). Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The State must have been provided the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Henry, 513 U.S. at 365) (quoting Picard, 404 U.S. at 275 (citation omitted)). "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts

having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secure by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497

(1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim). A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice. *See* Schlup v. Delo, 513 U.S. 298, 327 (1995). This standard "thus ensures that petitioner's case is truly 'extraordinary.' " *Id.* (citing McCleskey, 499 U.S. at 494). Such a case is "extremely rare." Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). However, "it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt." *Id.* at 13.  The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123.  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth

Amendment.  Thus, the court need not address both prongs if the petitioner

fails to prove one of the prongs.  <u>Strickland</u>, 466 U.S. at 697.

Petitioner's convictions and sentences were imposed after he entered

pleas of nolo contendere to the charges.  The Supreme Court has strictly

limited the circumstances under which a guilty plea or its equivalent may be

attacked on collateral review.[6]  <u>Bousley v. United States</u>, 523 U.S. 614, 621

(1998).  A voluntary and intelligent plea by a person advised by competent

counsel may not be collaterally attacked, and "even the voluntariness and

intelligence of a guilty plea can be attacked on collateral review only if first

challenged on direct review."  *Id.*  A plea is voluntary in a constitutional

sense "unless induced by threats . . . , misrepresentations . . . , or perhaps

by promises that are by their nature having no proper relationship to the

prosecutor's business."  *Id.* at 619 (quoting <u>Brady v. United States</u>, 397

U.S. 742, 755 (1970)).  A plea is considered intelligently made if the

accused is reasonably informed of the true nature of the charge.

<u>Henderson v. Morgan</u>, 426 U.S. 637, 645 (1976).  "A defendant is not

entitled to withdraw his plea merely because he discovers long after the

---

[6] A plea of nolo contendere is treated as a plea of guilty for purposes of federal habeas.
*See e.g.*, <u>North Carolina v. Alford</u>, 400 U.S. 25, 35-37 (1970); <u>Hudson v. United States</u>,
272 U.S. 451, 455 (1926); <u>Florida v. Royer</u>, 460 U.S. 491, 495 n.5 (1983).  Further,
even though Petitioner entered pleas of nolo contendere, he admitted at sentencing that
he committed the offense to which he was pleading.  *See* Ex. B at 8.

plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." Brady, 397 U.S. at 757 (1970).

The Strickland test for ineffective assistance of counsel is applicable in habeas challenges to the voluntariness of a plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985); Premo v. Moore, 562 U.S. 115, 125 (2011). In the plea context, the focus under the performance prong of Strickland is on whether counsel's advice was within the wide range of competence demanded attorneys in criminal cases. Hill, 474 U.S. at 56-57. Judicial scrutiny in this context is highly deferential because the decision to plead prior to receipt of the evidence involves the making of difficult judgments, and the requirement that a plea must be intelligently made "is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." McMann v. Richardson, 397 U.S. 759, 769-70 (1970). A defendant who enters a plea may not raise claims relating to deprivation of constitutional rights occurring before the plea, but may only attack the voluntariness of the plea by showing counsel's advice fell below the McMann Standard. Tollett v. Henderson, 411 U.S. 258, 267 (1973).

The U.S. Supreme Court has further explained:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989); *see* Mabry v. Johnson, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."), disapproved of in part on other grounds, Puckett v. United States, 556 U.S. 129, 138 n.1 (2009); Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.").

To satisfy the prejudice prong of Strickland in the context of a challenge to a conviction based on a plea, the petitioner must establish that the deficient performance affected the outcome of the plea process and that, but for counsel's errors, the petitioner would not have entered the plea

and would have insisted on going to trial.  Hill, 474 U.S. at 58-59.  "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding."  Strickland, 466 U.S. at 693.

## Ground 1: Recantation

Petitioner first contends that the post-conviction court erred and violated his Fifth and Fourteenth Amendment rights by denying his claim of victim recantation, which decision he contends was an unreasonable determination of the facts in light of the evidence presented.  ECF No. 33 at 4.  This claim was raised in Petitioner's amended Rule 3.850 motion for post-conviction relief and an evidentiary hearing was granted on this claim. Ex. F-2 at 66, 118-20.  The hearing was held in two parts—on November 12, 2013, and March 5, 2014.  Exs. F-2 at 160-215, Ex. G at 239-285.

At the evidentiary hearing, the victim S.W., Petitioner's daughter, testified that she never told the investigator that her father penetrated her vagina.  Ex. G at 247.  She testified that Petitioner touched her breasts and her vagina but never penetrated it with his fingers.  *Id.*  When asked how old she was when Petitioner first touched her in that way, she said, "Probably 12."  *Id.* at 249.  She said the touching first occurred in Santa Rosa County when she moved to the Chantilly Circle residence.  She testified she was "probably" age eleven when they moved there, *Id.* at 248,

but later said she was "probably" age twelve.  Ex. G at 249.  She testified they moved to Chantilly Circle the summer before fourth grade.  *Id.* at 274.

She testified that her original statement to the investigator, that Petitioner's touching her vagina was painful like with a tampon, was misunderstood by the investigator to mean penetration occurred.  *Id.* at 249-50.  S.W. testified that during recent counseling, she disclosed to the counselor and her mother that she never told investigators her father penetrated her vagina with his fingers.  *Id.* at 246.  She said she disclosed this because she "was scared and I didn't know what I was - - I had gotten used to lying, and I didn't know I had said anything like that."  *Id.* at 247.  She said she originally told the investigators something about a tampon in trying to explain the pain she felt during the "rubbing," and "had just gotten used to lying, and I never intended to say he had penetrated me."  *Id.* at 249-50.

On cross-examination of S.W., the state played a videotape of S.W.'s interview given when she was thirteen-years-old in which she stated that her father "used to touch [her] whenever - - since [she] was nine."  *Id.* at 257.  She told the interviewer Petitioner would touch her breasts and her vagina under her clothes.  *Id.* at 260.  She stated, "He would put his fingers up my vagina, and he would touch my breasts under my clothes."  Ex. G at

261.  She said the first time occurred when they lived in Alabama when he

asked her to sit on his lap and he "put his fingers up my vagina."  *Id.* at 261-

62.  She reiterated that this conduct occurred ever since she was age nine.

*Id.* at 262.  He touched her on both the outside and the inside of her

vagina.  *Id.* at 265.  She described the feeling as like "something big going

inside of me and it felt weird."  *Id.* at 266.  Her father told her not to tell

anyone about their "little game."  *Id.* at 262.  She stated that he also had

tried to make her touch his penis "a long time ago" when she was age

twelve.  *Id.* at 264.  She said she did not want to touch him but he would

sometimes make her touch his penis with her hand.  *Id.* at 266.  She said

these incidents occurred more than 20 times, whenever her mother had to

go someplace with her older sister or when S.W. went places alone with

him in his truck.  *Id.* at 266, 270.

     Defendant testified at the evidentiary hearing and denied he ever

penetrated S.W.'s vagina with his fingers and said he never admitted digital

penetration in his statements to investigators.  Ex. F-2 at 174, 185.  He

agreed on cross-examination that he did admit to investigators that he

touched his daughter's breasts and vaginal area improperly on multiple

occasions.  *Id.* at 186, 188-89.  He said he may have told police that he

"let" his daughter touch his exposed penis.  *Id.* at 189.  He also testified that S.W. was age 12 or older when the touching occurred.  *Id.*

Petitioner's trial counsel testified at the evidentiary hearing that Petitioner told her he touched his daughter's vagina but did not digitally penetrate her "to his knowledge."  Ex. F-2 at 195.  She testified that Petitioner told her he "would not call [S.W.] a liar, that he needed help, and that he has a problem."  *Id.* at 198.

Evelyn Weatherly, S.W.'s mother, testified that S.W. moved from the residence on Copperfield to Chantilly Circle in Santa Rosa County in August when S.W. was age 12 or 13, but she was uncertain which year that occurred.  She believed it was the year before Petitioner was arrested, but said, "I don't know; the dates are confusing."  Ex. G at 275.  When asked if that would have been August of 2009, she replied, "Maybe we had been there the previous August; I'm not sure.  I guess I'd have to look at the papers."  *Id.* at 276.  When asked how long they lived at the Chantilly residence at the time of the arrest, she responded, "I can't remember whether it was a year or two."  *Id.*

Post-conviction counsel argued that S.W.'s current testimony that her father never penetrated her with his fingers was newly discovered evidence in the nature of a recantation which, counsel argued, would probably

produce an acquittal if presented to a jury, and for that reason justified

vacating the pleas, convictions and sentences.  *Id.* at 279-81.  Counsel

argued that if this recantation had been known at the time of the plea offer,

Petitioner would have gone to trial rather than enter a plea.  *Id.* at 282.

Counsel also contended that the victim's testimony about her age when the

acts occurred once the family moved to Santa Rosa County also justified

vacating the convictions and sentences.  Ex. G at 283-84.

The post-conviction court found that both the State and Petitioner

agreed S.W.'s recantation qualified as newly discovered evidence, but that

to allow withdrawal of the plea, Petitioner must show withdrawal is

necessary to prevent manifest injustice.  *Id.* at 293.  After discussing the

evidence presented at the hearing, the court denied the claim, stating:

> Defendant has failed to demonstrate that a manifest
> injustice has occurred, and therefore is not entitled to relief.
> Initially, the Court finds S.W.'s evidentiary hearing testimony
> unreliable and not credible.  Instead, the Court believes the
> details of S.W.'s previously recorded statement . . . .  The Court
> also does not find S.W.'s or Defendant's evidentiary hearing
> testimony credible that the abuse stopped during the time she
> resided at the Copperfield address in Santa Rosa County,
> Florida, based in part on the sheer volume and the
> circumstances of abuse described by the victim in her recorded
> statement.  Additionally, the Court notes that the victim never
> stated Defendant rubbed her vagina or ever said the word
> "tampon" during her previous interview, contrary to S.W.'s
> evidentiary hearing testimony.  The court also finds that,
> contrary to S.W.'s hearing testimony, there is no possibility the
> interviewer could have misunderstood S.W.'s statements

describing the abuse and digital penetration.  While S.W.'s evidentiary hearing testimony was full of inconsistencies and vague recollections, S.W.'s recorded interview was detailed and unequivocal – S.W. clearly indicated the abuse started when she was nine years old when she lived in Daphne, Alabama[;] the victim only lived in Daphne, Alabama, for two to four months until she moved to Santa Rosa County, Florida[;] the abuse continued until June or July of 2009, just a few months after S.W.'s thirteenth birthday[;] and Defendant put his fingers "up in" her vagina, and it felt like "something big going inside of me and it felt weird."  The Court finds that based on S.W.'s recorded representations there is no possibility that her previous statements regarding digital penetration had been misunderstood by the interviewer.

The Court also finds Mrs. Weatherly's testimony unreliable that S.W. was twelve or thirteen years of age when they moved to Chantilly Circle in Santa Rosa County, Florida.  The Court finds Mrs. Weatherly's testimony credible that S.W. moved to the Chantilly Circle in August.  However, Mrs. Weatherly vacillated between whether it was August 2008, August 2009, or possibly even August 2007, when the victim moved to Chantilly Circle.  Because Mrs. Weatherly is unsure of which year S.W. moved to Chantilly Circle, her testimony that S.W. was twelve or thirteen years of age when they moved to the residence is not credible.

Additionally, Defendant cannot show manifest injustice in the instant case.  Even if this Court were to find Defendant's testimony credible that he did not digitally penetrate the victim and that she was twelve years and older when any abuse occurred (which it does not), because Defendant is not claiming he is innocent but only that he is guilty of lesser offenses, Defendant cannot prove that a manifest injustice occurred in this case.  Consequently, based on all of the above, Defendant has failed to demonstrate that a manifest injustice has occurred:  He is not entitled to relief as to this claim.

Ex. G at 294-96 (citations and footnotes omitted).  Petitioner appealed the

denial of relief on this claim to the state First District Court of Appeal.  Ex. I

at 10.  After complete briefing, the denial of relief was affirmed per curiam without discussion.  Ex. L.

Petitioner argues that the post-conviction court's decision on this claim was an unreasonable determination of the facts because the State failed to present any other evidence at the evidentiary hearing to substantiate the victim's out-of-court statements about the offenses.  ECF No. 33 at 4, 47; ECF No. 18 at 2-4.  He argues that his testimony that the victim's medical report showed no evidence of scarring or physical damage to the vaginal area corroborates the victim's recantation.  He contends that the recanted out-of-court statement, being the only evidence presented by the State, is insufficient to establish guilt beyond a reasonable doubt.  ECF No. 33 at 47.  Thus, he argues, his convictions cannot stand based on this proof.

Respondent contends that the federal claim is unexhausted because the record shows that Petitioner never alleged any constitutional violation or argued any federal precedent in the state courts.  ECF No. 44 at 32.  As discussed earlier, in order for a federal claim to be exhausted in the state courts, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim."  Preston, 785 F.3d at 457 (quoting McNair, 416 F.3d at 1302).  Petitioner must "fairly present" his

claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Henry, 513 U.S. at 365. To obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210. In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." Alderman, 22 F.3d at 1551. A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson, 353 F.3d at 892.

Petitioner has offered no explanation of any external impediment accounting for his failure to allege a violation of any federal right in the state courts in regard to this claim. Under the miscarriage of justice exception, Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent" which is a stronger showing than is necessary to establish prejudice. *See* Schlup, 513 U.S. at 327. Such a case is "extremely rare." *Id.* at 324. Further, "[c]laims of actual innocence based on newly discovered evidence have

never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.*

Petitioner has not demonstrated that any constitutional violation occurred, which is the "gateway" to habeas review of a procedurally defaulted claim, nor has he demonstrated that he is actually innocent as a basis for the court to excuse the procedural default. He contends that the recantation by S.W. shows that the State would have insufficient evidence to prove the offenses beyond a reasonable doubt. However, actual innocence means factual innocence, "not mere legal insufficiency." Bousley, 523 U.S. at 623. Further, Petitioner's arguments ignore the fact that he was not tried by a jury but entered pleas to the offenses for which he was convicted—and in so doing, he expressly admitted his guilt. For all these reasons, Petitioner cannot demonstrate a legal basis on which to excuse the procedural default. Regardless of any procedural default, however, the claim should be denied on the merits.

The trial court based its rejection of the recantation as grounds to vacate on credibility of the witnesses.  "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."  Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011).  Under § 2254(d), federal courts have "no license to determine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  Credibility and demeanor of a witness are considered to be a questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence.  Consalvo, 664 F.3d at 845.

Further, under Florida law, a criminal defendant who seeks to withdraw a plea based on newly discovered evidence must meet a high threshold and must prove that the withdrawal is necessary to correct a manifest injustice, as the post-conviction court found.  The defendant has the burden of establishing this manifest injustice by clear proof of prejudice.  Perez v. State, 118 So. 3d 298, 301 (Fla. 3d DCA 2013).  In light of the testimony and evidence presented at the evidentiary hearing, the post-

conviction court's credibility determinations and conclusions are not objectively unreasonable.

Further, under Florida law, "recanted testimony is 'exceedingly unreliable,' and if a trial court is not satisfied that the recanted testimony is true, it has a duty to deny the defendant a new trial." Hurst v. State, 18 So. 3d 975, 993 (Fla. 2009) (quoting Heath v. State, 3 So. 3d 1017, 1024 (Fla. 2009) (emphasis omitted) (quoting Consalvo v. State, 937 So. 2d 555, 561 (Fla. 2006))). Florida courts give "highly deferential" review to a trial court's determination concerning the credibility of a recantation, and will affirm if it is supported by competent, substantial evidence. Heath, 3 So. 3d at 1024. In this case, the post-conviction court did not find S.W.'s evidentiary hearing testimony to be reliable, and the reasons for rejecting it were supported by the record. Under all these circumstances, Petitioner demonstrated no right to an order vacating his pleas of nolo contendere or the convictions that resulted from those pleas. On appeal from denial of this claim, the state First District Court of Appeal affirmed. Ex. L. This adjudication is entitled to AEDPA deference.

Petitioner has failed to demonstrate that the state court adjudications of this claim are contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court or that they

are unreasonable determinations of the facts in light of the evidence presented.  Habeas relief on Ground 1 should be denied.

### Ground 2: Misadvice of Counsel and Failure to Investigate

Petitioner next contends in a two-part claim that trial counsel rendered ineffective assistance by misadvising him concerning any favorable and plausible defenses and by failing to investigate available defenses including a medical examination of the victim, resulting in a violation of his constitutional rights and an involuntary plea.  ECF No. 33 at 6.  In part one of this ground, Petitioner argues that counsel affirmative misadvised him he had no viable defenses in the case.  *Id.*  Because of the misadvice, Petitioner contends, he would not have entered a plea but would have gone to trial.  In part two of this ground, Petitioner contends that he learned during the evidentiary hearing that counsel failed to investigate the medical or physical evidence and failed to interview any witnesses.  ECF No. 33 at 6.  He contends he received a medical report concerning examination of the victim after counsel sent it to him with other court records after the direct appeal and that the report would have assisted in a defense of lack of digital penetration.  ECF No. 33 at 6.

Turning to the first part of this claim, Petitioner contended in the state court in claim five of his amended motion for post-conviction relief that trial

counsel rendered ineffective assistance by misadvising him that he had no plausible defenses because of the statement he gave to police and by failing to inform him about the elements of the offenses alleged. Ex. F-2 at 70, 89-91. A post-conviction evidentiary hearing was granted on this claim at which Petitioner and trial counsel testified. Ex. F-2 at 192-200, Ex. G at 201-08.

Petitioner testified at the hearing that his trial counsel told him if he went to trial he had no chance because of his statement to police. Ex. F-2 at 176. When trial counsel testified, she was asked if she ever advised Petitioner that he had no viable defenses, to which she responded: "No, sir. I did not say that." Ex. G at 207. She also testified that when she met with Petitioner at the jail and discussed the charges against him and his incriminating statement to police, she advised him that he could take the stand and testify that the things S.W. told police were not true. *Id.* at 195. Counsel and Petitioner also discussed the "recorded interview and confession" he gave police. Counsel testified that Petitioner told her he remembered saying those things to the officers, *Id.* at 196, but that he kept saying he never digitally penetrated her. *Id.* Counsel testified that she told him he could testify in his own defense and say, "[T]his is what I meant by that," or explain himself further to a jury. *Id.* At 195.

The post-conviction court denied relief, concluding that trial counsel's testimony concerning what she told Petitioner and what they discussed concerning evidence to be submitted at trial was credible, including her testimony that she never told Petitioner he had no viable defense.  Ex. G at 302.  The post-conviction court denied claim five of the amended post-conviction motion, as follows:

> Defendant next alleges that his counsel provided ineffective assistance of counsel because she misadvised him that he had "no viable defense" to the charges.  Specifically, Defendant alleges that his counsel informed him that he had no viable defense because of the statement he made to the arresting officer.  Defendant alleges that he never admitted to law enforcement that he had committed any type of sexual battery or attempted sexual battery and consequently he had a viable defense.
>
> An evidentiary hearing was convened regarding this allegation.  At the evidentiary hearing, Defendant testified consistently with the allegations in his motion:  Trial counsel told him that if he went to trial "we had no chance" because of his statements to police. . . .  Defendant further testified that he believed there was no proof, no evidence that the child victim had been penetrated whatsoever, because the child victim was never examined by a doctor.  Defendant also testified that he denied digital penetration and the time frame of the allegations alleged, but his counsel never gave him any input regarding these denials; counsel just informed him he was going to get a life sentence. . . .
>
> [Defense counsel] also testified at the hearing regarding this claim.  [She] acknowledged that Defendant indicated "he had done some of these things" but he did not digitally penetrate the victim.  Counsel testified that she explained to Defendant that, based on the victim's recorded statement, the victim was going to testify he in fact digitally penetrated her.  Counsel informed Defendant that he could certainly take the

stand in his own defense and testify that digital penetration did not occur.  Counsel further testified that she also got into the fact that she had reviewed Defendant's recorded interview and confession, and the State would be playing that recorded interview at the trial.  Counsel explained to Defendant that he could proceed to trial and choose to testify to try to explain what he meant by his statements in the interview, but Counsel advised that the recording was "pretty significant evidence" against Defendant and the jury would be hearing the recording. Even when the State was indicating it was going to withdraw its plea offer, counsel informed Defendant of his option to go forward with trial.  Counsel also testified that she never told Defendant that he had no viable defense.

After hearing the testimony regarding this issue, the Court finds counsel's testimony credible regarding this topic.  The Court further finds that because Defendant has failed to demonstrate that his counsel misadvised him that he had no defense available to him at trial, he is not entitled to relief as to this claim.

Ex. G at 300-02 (footnotes omitted).

Thus, the post-conviction court found Petitioner had failed to demonstrate that trial counsel rendered ineffective assistance by misadvising him about his lack of any defenses.  *Id.*  Denial of relief was affirmed on appeal.  As discussed earlier, credibility determinations are the province of the state court, not a federal court engaging in habeas review. Consalvo, 664 F.3d at 845; Lonberger, 459 U.S. at 434.  Credibility determinations are considered to be findings of fact entitled to a presumption of correctness under the AEDPA.  For these reasons, and based on the evidence presented at the hearing, Petitioner has not

demonstrated entitlement to relief under § 2254(d) for this first part of Ground 2.

In the second part of this ground, Petitioner contends that he learned during counsel's testimony at the evidentiary hearing that she failed to investigate the medical or physical evidence and failed to interview any witnesses. ECF No. 33 at 6. He bases this part of his claim on trial counsel's testimony at the post-conviction evidentiary hearing in a series of questions and answers concerning her initial interview with Petitioner and the checklist that she discussed with him at the jail. Ex. F-2 at 193-200. Based on this testimony, Petitioner contends that counsel admitted she conducted no interviews and called no witnesses. ECF No. 33 at 6. Petitioner conceived of this claim of trial counsel's failure to discuss a defense based on lack of medical evidence after trial counsel testified at the evidentiary hearing. ECF No. 33 at 6.

Because this aspect of his claim in this court is based on testimony at the evidentiary hearing on his amended post-conviction motion, Petitioner did not obtain a ruling on the claim from the post-conviction court in that proceeding. Accordingly, Respondent contends that the claim is unexhausted, and the fact that it was presented in a successive post-conviction motion that Respondent contends was untimely, Ex. O, does not

cure that defect.  Further, no ruling or appellate decision appears in the record before this court pertaining to the successive motion.  Respondent also correctly notes that on appeal from denial of relief, Petitioner raised for the first time the issue of counsel's failure to discuss the lack of medical evidence with him.  ECF No. 44 at 56 (citing Ex. I at 21-23; Ex. K at 6).  In his reply in this court, Petitioner relies on this appellate issue as a basis to find the claim properly exhausted in state court. ECF No. 49 at 20. However, as discussed earlier, Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  Henry, 513 U.S. at 365; Picard, 404 U.S. at 275; O'Sullivan, 526 U.S. at 845.  The Eleventh Circuit has made clear that a habeas petitioner may not present specific specific factual instances of ineffective assistance of counsel that were not first presented to the state courts.  Kelley v. Sec'y, Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992).

Regardless of any procedural default, a review of trial counsel's testimony at the post-conviction hearing demonstrates that this aspect of Petitioner's claim lacks merit.  Trial counsel testified at the evidentiary hearing, in pertinent, part as follows:

> Q. [State's counsel] Would you tell us what you have marked on that checklist?

A. [defense counsel] Yes, sir.  I went out on February the 25th, of 2010, to have an **initial meeting** with my client at the jail.  At that time we talked about any other holds, or pending charges that are currently on probation or parole to which he indicated none.  We discussed the possible effects of these charges, as far as Jimmy Ryce is concerned, and sex offenses in general.

I have notes that indicate that my client admitted that he did do some things wrong, he wanted counseling, and confessed that he needed help and has an erectile dysfunction.

I then went on to the next part of my checklist that indicates a mental health check. . . .  My notes say that he understands the charges, that I explained Count 1 and Count 2 were capital offenses, as currently charged, and that I went over and explained all of the elements.

Q.  Okay.  Did you explain possible defenses?

A.  At that point in time no.  I would have just gone over what he was charged with and what the arrest report was alleging at that point in time.

Q.  Well, and really in a case like this with a child's statement it seemed the only defense would be "I didn't do it."

A.  Correct.  He did indicate though however that he had done some of these things, but he was - - he did tell me that he had not digitally penetrated her, "but I just touched the outside of her vagina to his knowledge."

I explained to him that, "She's going to testify that you did in fact digitally penetrate her to my understanding based on the police report at that time, but certainly you can always take the stand in your own defense and say that did not occur.". . .

. . . .

A.  Do you want me to keep going with my checklist?

Q.  Yes, ma'am.  Thank you.

A. Okay. I then reviewed the arrest report, and I have that as a checklist on here as well.  I reviewed it for probable cause. I review the Information, the statute, and the case law and determine if there's any motions up front I can file, such as a

motion to dismiss or a motion to suppress.  And I indicated there were none.

    And then I also made a note that I needed to see the recorded video interview of him with the police since we had talked about it, but I hadn't seen it at that meeting.

    . . . .

    A.  Okay.  I then have a section for interview with the client indicating what day I go, that I warned them about talking with outside sources about their case, telling them not to speak to anybody else.

    I did write down notes at that point where he indicated to me that he felt the report was true, that's the - - we're talking about the arrest report at that time - - that he would not call [S.W.] a liar, that he needed help, and that he has a problem.

    Continuing along, I then have a reviewed discovery - - anything I have **at that point in time, my initial review by me is checked**, then with the client, and then we go through explaining, as we get those items, the score sheet, the offer, the max penalties, and any mandatory minimums or in these type of cases I add in sex offender, predator determination so they understand what that means.

    Q.  Okay.

    A. **We have a section [in the checklist] for investigator requests.  There were none, so I have none indicated, and interviews or called witnesses for the defense.  I have none indicated at that time.**

    Q.  Okay.  Well, you would have looked at the tape of the child though?

    A.  Yes, sir. I would have.

    Q.  Okay.  Did you ever take those out to the jail and offer to let him look at those?

    A.  I did offer, and he indicated that he did not want to watch them.

Ex. F-2 at 194-199 (emphases added).

As the transcript shows, counsel was testifying only about what was discussed in the initial meeting at the jail while going through the categories on counsel's standard checklist.  At that time there had been no investigator request, interviews, or witnesses called to testify.  This testimony does not demonstrate that counsel failed to properly investigate the case prior to entry of the plea.  Moreover, even assuming, as alleged, that the medical examination report of the victim noting no injuries or scarring from the alleged digital penetration could have been presented to a jury, such would not provide proof that digital penetration did not occur. Petitioner has failed to demonstrate a reasonable probability that, but for the alleged error of counsel, the result of the proceeding would have been different—a reasonable probability being one sufficient to undermine confidence in the outcome.  *See* Strickland, 466 U.S. at 694.

For all the foregoing reasons, Petitioner has failed to demonstrate that the adjudication of this claim in the state court was contrary to, or an unreasonable application of, Strickland or any other clearly established federal law as determined by the Supreme Court, or that it was an unreasonable determination of the facts in light of the evidence in the proceeding.  Accordingly, habeas relief on Ground 2 should be denied.

## <u>Ground 3: Failure to File a Motion to Suppress</u>

Petitioner contends in this ground that trial counsel rendered ineffective assistance by failing to file a motion to suppress Petitioner's arrest statement as involuntary, and by failing to inform Petitioner of this defense. ECF No. 33 at 7. This claim was raised in the amended Rule 3.850 motion as Claim Six. Ex. F-2 at 71. The post-conviction court denied relief, stating that the claim was facially insufficient in that it makes only the conclusory allegation that the statement was coerced. Ex. G at 304. The court noted that Petitioner had been provided an opportunity to amend the claim, which had been raised in the first Rule 3.850 motion which was stricken for legal insufficiency, but had not done so.[7] The post-conviction court further found that even if not facially insufficient, the claim was without merit because trial counsel testified at the evidentiary hearing that Petitioner acknowledged that he spoke to law enforcement of his own accord, supporting counsel's conclusion that there was no basis on which to file a motion to suppress. *Id.*

---

[7] The claim was raised in Petitioner's first Rule 3.850 motion. Ex. F-2 at 52. After the post-conviction court struck that motion as facially insufficient, Ex. F-2 at 57, an amended Rule 3.850 motion was filed raising the same claim stated in virtually the same manner. Ex. F-2 at 71.

In this court, Petitioner contends that his statements to police were involuntary and coerced due to emotional distress as a result of his wife's poor health and because of remarks made by detectives in the interview. ECF No. 33 at 7.  He argues here that the detective "put the Petitioner in fear of reprisal from the detectives every time he attempted to protest his innocence."  *Id.* at 8.  These factual allegations were not made in the claim filed in the post-conviction court.

Respondent contends that this claim is untimely because it was not raised in the initial timely-filed § 2254 petition in this court, (ECF No. 1), or in the timely-filed amended § 2254 petition (ECF No. 7).  ECF No. 44 at 61. The claim was first raised in the amended petition filed March 15, 2016. ECF No. 17 at 8.  Respondent correctly argues that a claim filed outside the one-year limitations period, after tolling is taken into account, is not properly heard in habeas proceedings unless it relates back to a common core of operative facts uniting the original and newly asserted claim.  ECF No. 44 at 61.  In Mayle v. Felix, 545 U.S. 644 (2005), the Supreme Court explained, "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650; *see also* Fed. R. Civ. P. 15(c)(1)(B).

"[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id*. at 659.

In support of the contention that the claim is untimely and must be dismissed, Respondent correctly notes that the one-year limitation period for filing a § 2254 habeas petition began to run after May 12, 2011. That date marked the expiration of the 90 day period in which Petitioner could file a petition for writ of certiorari in the United States Supreme Court after the state First District Court of Appeal affirmed his convictions and sentences on direct review on February 11, 2011. Ex. E. After May 12, 2011, the limitations period ran for 297 days until Petitioner filed his Rule 3.850 motion on March 5, 2012.[8] The unsuccessful appeal from denial of post-conviction relief was final on August 19, 2015, when the mandate was issued. Ex. N. Accordingly, because 297 days of the one-year limitations period had run, only 68 days remained after the post-conviction appeal was final in which to file a timely § 2254 petition, unless otherwise tolled. The initial § 2254 petition was filed on August 12, 2015, but that filing did not toll the running of the one-year statute of limitations. Duncan v. Walker, 533

---

[8] Although Petitioner filed a timely motion to mitigate sentence on April 8, 2011, which was denied on April 20, 2011, that filing does not toll any time under the one-year limitations period because it occurred before the limitations period began to run on May 12, 2011.

U.S. 167, 181-82 (2001). The one-year limitation period would, therefore, terminate on October 26, 2015, unless otherwise tolled.[9] A timely amended petition was filed on October 13, 2016. ECF No. 7.

Both the initial § 2254 petition filed on August 12, 2015, and the amended § 2254 petition filed on October 13, 2015, were filed within the one-year limitation period. However, none of the amended § 2254 petitions filed thereafter fell within the one-year statute of limitations period.[10] Petitioner first raised this claim concerning counsel's failure to file a motion to suppress in the amended petition filed on March 18, 2016, well outside the one-year statute of limitations. ECF No. 17 at 8.

Petitioner contends in his Reply that Federal Rule of Civil Procedure 15(a)(2) "states that after the statute of limitations has run, an individual may amend a habeas petition with leave of court." ECF No. 49 at 26. This is an incorrect interpretation of that subsection, which does not address habeas petitions or statutes of limitation. It simply provides that where a party is not entitled to amend as a matter of right, as described in Fed. R.

---

[9] Petitioner filed a successive Rule 3.850 motion on July 9, 2015, Ex. O, but that motion was filed outside the state two-year statute of limitations period for filing motions for post-conviction relief, with certain exceptions. *See* Florida Rule of Criminal Procedure 3.850(b). The record does not reflect any state court ruling on either the timeliness of the motion, the sufficiency of the motion, or its merits. For that reason, it is impossible to determine any tolling effect flowing from that motion.

[10] Petitioner's subsequent amended petitions were filed, respectively, on March 18, 2016, April 15, 2016, and September 6, 2016. ECF Nos. 17, 21, 33.

Civ. P. 15(a)(1), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

The one-year statute of limitations contained in § 2244(d)(1) governs all claims filed in § 2254 petitions and, significantly, applies on an individual claim-by-claim basis.  Zack v. Tucker, 704 F.3d 917, 926 (11th Cir. 2013), cert. denied, Zack, III v. Crews, 134 S. Ct. 156 (2013).  Thus, for any new claim in an untimely amended petition to be properly before the habeas court, it must be found to relate back to a claim in an earlier, timely-filed petition.  Mayle, 545 U.S. at 659.  Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amended complaint, in this case an amended habeas corpus petition, relates back to the original pleading when it arises "out of the same conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Although this court interpreted the relation-back provision broadly in the past, the Supreme Court's decision in Mayle explains that the interpretation must be more restricted.  Under Mayle, a new claim in an amended petition relates back, and thus avoids a limitations bar, only when it is tied to a "common core of operative facts" as a claim contained in the original petition.  Id. at 664.  It is not enough that the new argument pertains to the same trial, conviction, or sentence.  "When the nature of the amended claim supports specifically the original

claim, the facts there alleged implicate the original claim, even if the original claim contained insufficient facts to support it." <u>Ciccotto v. United States</u>, 613 F. App'x 855, 859 (11th Cir. 2015) (unpublished) (quoting <u>Dean v. United States</u>, 278 F.3d 1218, 1222 (11th Cir. 2002)). "[O]ne may amend a claim to 'fill in facts missing from the original claim." <u>Ciccotto</u>, 613 F. App'x at 859.

Respondent is correct that the claim presented in Ground 3 of the Third Amended Petition does not depend on a common core of operative facts contained in or supporting any timely-filed claim. Petitioner raised only two claims in the timely filed amended petition: (1) a claim seeking to vacate the conviction and sentence for lack of proof beyond a reasonable doubt, apparently based on the alleged recantation, ECF No. 7 at 5; and (2) a claim seeking to vacate the plea due to trial counsel's testimony at the evidentiary hearing, which Petitioner characterized as admission that she did not conduct any investigation into the victim's medical examination, ECF No. 7 at 6. Neither of these timely-filed claims relied on operative facts concerning Petitioner's statement to police and whether counsel should have moved to suppress the statements as involuntary. For that reason, this Ground 3 is not timely.

Regardless of the untimeliness of the claim, it is without merit and should be denied.  The post-conviction court addressed this claim, stating first that the claim was legally insufficient, despite the opportunity to amend that was provided to Petitioner.  Ex. G at 304.  Whether the claim was legally insufficient is a matter of state law.  As discussed earlier, "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  McGuire, 502 U.S. at 67-68 (1991); Cooke, 562 U.S. at 222 ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Isaac, 456 U.S. at 121 n.21)).  Questions of state law and procedure rarely raise issues of federal constitutional significance because a state's interpretation of its own laws does not involve a federal constitutional question, Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991), even where the issue is couched in terms of equal protection and due process or other constitutional provisions.  *See* Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1998).

Federal claims that are presented to the state courts but rejected on independent and adequate state grounds are not cognizable in a § 2254

habeas proceeding.  Coleman v. Thompson, 501 U.S. 722, 729 (1991).

The state court's ruling of legal deficiency in this case implemented a well-recognized state procedural bar and was based on established state procedural grounds.  The United States Supreme Court has held that presenting a claim to the state court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation.  *See* Castille v. Peoples, 489 U.S. 346, 351 (1989); *see also* Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) (observing that a state habeas petitioner who fails to raise a federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default).

To foreclose federal review, the state bar must be firmly established and regularly followed.  Ford v. Georgia, 498 U.S. 411, 423-24 (1991).  The state law relative to legal sufficiency of Rule 3.850 motions is firmly established and regularly followed in Florida.  The Eleventh Circuit has concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under applicable law.

LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1260 n.25 (11th Cir. 2005) (citing Whiddon v. Dugger, 894 F.2d 1266, 1267-68 (11th Cir. 1990)).

Petitioner has shown no cause for his failure to state a legally sufficient claim in the state court or any prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210.  He has not shown that "an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *See* McCleskey, 499 U.S. at 497 (quoting Murray, 477 U.S. at 488).  Nor has Petitioner shown that his claim constitutes the rare case where manifest injustice excuses the procedural default.  *See* Henderson, 353 F.3d at 892 (citing Murray, 477 U.S. at 495-96).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 327.  No constitutional violation has been shown, and no evidence of actual innocence appears in the record to excuse Petitioner's failure to allege a legally sufficient claim in state court.

Moreover, the post-conviction court held that notwithstanding the legal insufficiency of the claim, Petitioner failed to demonstrate that his trial counsel was ineffective for failing to file a motion to suppress his statement

because, as trial counsel testified at the evidentiary hearing, Petitioner acknowledged to her that he voluntarily spoke with police.  Ex. G at 304 (citing testimony at Ex. F-2 at 196-97).  Thus, Petitioner failed to demonstrate under Strickland that counsel's representation was deficient. These rulings were affirmed by the state First District Court of Appeal after full briefing.  Exs. I, J, K, L.  The state courts' adjudication is entitled to AEDPA deference.  Because the Strickland standard is a general standard, a state court has great latitude to reasonably determine that a defendant has not satisfied that standard.  *See* Mirzayance, 556 U.S. at 123. Moreover, the federal court must grant relief only where the state court's ruling contained an error so clear that fair-minded persons could not disagree.  Wright v. Sec'y, Fla. Dep't of Corr., 761 F.3d 1256, 1277 (11th Cir. 2014).  That showing has not been made.

Because Petitioner has failed to demonstrate that the adjudication of the state courts was contrary to, or an unreasonable application of, Strickland or any other clearly established federal law as determined by the Supreme Court, or that it was an unreasonable application of the facts in light of the evidence presented, habeas relief on Ground 3 should be denied.

## Ground 4: Deposition of Victim

Petitioner contends that trial counsel rendered ineffective assistance by misadvising him concerning deposing the victim and for failing to conduct that deposition.  ECF No. 33 at 9.  Respondent contends that this ground, like Ground 3, is untimely because it was not raised in a timely-filed petition and does not relate back to any timely filed claim, as discussed in Ground 3, *supra*.  Respondent is correct that Petitioner failed to mention any failure to depose the victim in either of his timely-filed petitions or in an accompanying memorandum.  Thus, Petitioner has not demonstrated that this Ground 4 relates back to a common core of operative facts underlying any timely-filed claim or that any basis exists on which to allow equitable tolling.[11]

"Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition."  Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir.

---

[11] Petitioner's alleges in his reply, ECF No. 33 at 65, that he argued in his memorandum accompanying his timely-filed initial petition that if the victim had been deposed, her recantation would have been revealed.  However, the memorandum does not allege a failure to depose the victim.  At most, it alleged a failure to interview qualified medical experts.  ECF No. 2 at 10.  In the timely-filed amended § 2254 petition, Petitioner alleged that had the case "went to trial from the start, the victim's recantation would have been revealed in front of the jury." ECF No. 7 at 23.

2001). The burden of establishing entitlement to this extraordinary remedy rests with the petitioner. *Id.* at 1313-14; see also Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993) ("The burden is on the plaintiff to show that equitable tolling is warranted."). Tolling is an extraordinary remedy and does not extend to garden variety neglect. *Id.* at 1479-80. In order to demonstrate entitlement to equitable tolling, a petitioner must show the following: " '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). It is "an extraordinary remedy which is typically applied sparingly." Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000). "The threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002).

Petitioner alleged in the post-conviction court that counsel misadvised him that if he sought a deposition of the victim, the state would withdraw the plea offer and proceed to trial, and that counsel should have deposed the victim. Ex. G at 298. Thus, Petitioner had no reason when he filed his initial and amended timely § 2254 petitions not to include the claim he now

makes in his third amended petition.  He did not do so, and has provided

no basis on which to find that failure or neglect should be excused.

Respondent also contends that the claim is unexhausted in the state

courts and procedurally defaulted because although he raised a similar

claim in the amended motion for post-conviction relief in the trial court, and

obtained a ruling on that claim on the merits, he failed to appeal denial of

the claim to the State appellate court and, instead, expressly abandoned

that claim in his pro se brief.  ECF No. 44 at 77-78 (citing Ex. I at p. 6).

Regardless of the basis on which to dismiss the claim, or the fact that

it is procedurally defaulted by failure to present the claim to each

appropriate state court, it is without merit.  Petitioner alleged in Claim Four

of his amended motion for post-conviction relief that trial counsel rendered

ineffective assistance by failing to depose the victim and by misadvising

him about the consequences of taking such a deposition.  Ex. F-2 at 69.

The post-conviction court denied the claim, stating:

> Evidentiary hearing testimony was offered regarding this
> claim.  Defendant testified that he asked [trial counsel] about
> deposing the victim.  He claims [trial counsel] approached the
> State with the proposition of deposing the victim, and the State
> told her there would be no other plea offers if Defendant chose
> to take the victim's deposition.  Defendant testified it was a
> "joint decision" by himself and counsel not to depose the victim
> after the State indicated it would not extend a plea offer if
> Defendant deposed the child victim.  Defendant also testified
> that his counsel told him a deposition of the child victim "was

not going to do me any good" because of the incriminating statement he gave to law enforcement.

[Trial counsel] testified that she, in fact, had already scheduled a deposition of the child victim when Defendant indicated he no longer wanted to depose the child: Defendant did not want to put the child victim through the ordeal of a deposition, and instead asked that counsel try to renegotiate the terms of the State's plea offer. In support of her testimony, [trial counsel] presented email conversations between she and the Assistant State Attorney regarding Defendant's wishes to cancel the child victim's deposition and to renegotiate the offer. [Trial counsel] confirmed that the day Defendant entered the plea the State had indicated it would be withdrawing its plea offer if Defendant did not want the plea offer that day. However, [trial counsel] also testified that at no time did the State indicate it would withdraw the plea offer if Defendant chose to depose the child victim. [Trial counsel] reiterated that the decision not to depose the child victim came solely from Defendant.

After hearing both the testimony of Defendant and trial counsel on this topic, the Court finds that counsel's testimony is credible, while Defendant's testimony is not. The Court finds that it was Defendant's voluntary decision, without any coercion by the State or his counsel, to cancel the deposition of the child victim. Consequently, trial counsel was not ineffective for failing to take the deposition of the victim. Defendant is not entitled to relief as to this claim.

Ex. G at 298-99 (footnotes omitted).

The transcript of the evidentiary hearing confirms the court's ruling and shows that Petitioner testified that the decision not to depose the victim was a joint decision. Petitioner was asked at the evidentiary hearing, "[w]ho made that decision not [to] depose the alleged victim?" He responded it was "kind of a joint decision." Ex. F-2 at 180. The record also

supports the trial court's finding that Petitioner told his counsel to cancel the

deposition of S.W. because he did not want to put her through it.  Ex. F-2 at

199-200.  Trial counsel testified as follows:

> There was a formal plea offer made by Ms. Hankins, and I
> want to say I have an email to that effect.  It would have been
> before May.  I know that she had come to me with an offer of 45
> years of state prison.  And in fact we had the deposition of
> [S.W.] set.
>
> I went out to speak with my client and explained to him
> that I was going to go take her depo, were there any additional
> questions that he wanted me to consider asking at this
> deposition.  It was at that point that he said that he didn't want
> to put her through it, didn't want me to depose her, wanted me
> to cancel the deposition, and would I please try to renegotiate
> an offer with the State.

Ex. F-2 at 199.  Trial counsel read into the record the May 24, 2010, email

that she sent to the prosecutor, which included the statements, "He does

not want me to proceed with the deposition of [S.W.]" and "I'm going to

cancel the deposition at my client's request.  I also explained to him that

this may later delay his case, and he indicated that he is okay with that.  He

does not want to take her depo if it's not needed."  *Id.* at 199-200.  Trial

counsel testified that the prosecutor replied that the best offer that would be

made was the one totaling 45 years in prison, and that other than that, the

case would go to trial.  *Id.* at 201.  Counsel testified that this information

was presented to Petitioner, and that she advised him it was entirely his

choice.  *Id.*  That plea offer was the one he ultimately accepted at the plea and sentencing hearing held June 1, 2010, rather than going to trial.  The post-conviction court agreed to take notice of the transcript of the plea hearing.  *Id.* at 202 (referring to Ex. B).

At the entry of the plea, before the court accepted the negotiated pleas, the trial court inquired of Petitioner if his lawyer had talked to him "extensively" about the facts in the case and the plea agreement.  Ex. B at 5 (transcript pagination).  Petitioner responded in the affirmative.  *Id.*  Trial counsel represented to the court that she had gone over all the rights being waived under the plea and the requirement of a sexual predator designation.  *Id.* at 3-4.  Counsel stated that she and Petitioner had met numerous times and discussed the charges, discovery, and the video tapes, and that they had been in plea negotiations for quite some time.  Ex. B at 4.  Petitioner affirmed that he understood everything counsel told him about the plea and that he understood he would be sentenced in accord with the terms of the plea agreement.  *Id.* at 7.  The trial judge asked Petitioner if he did commit the charges for which he would be sentenced, and Petitioner responded, "Yes, sir."  *Id*. at 8.  The plea agreement, which set forth in writing the rights being waived by Petitioner and the sentence and other conditions to be imposed, was signed by him.  Ex. A at 15-17.

The post-conviction court denied this claim after finding that it was Petitioner's decision to cancel the deposition of the victim.  This constitutes a finding of fact, which under § 2254(e)(1) is presumed correct and places on Petitioner the burden of rebutting that presumption by clear and convincing evidence.  The post-conviction court also decided this claim based on the credibility determination that trial counsel's testimony was credible and Petitioner's testimony was not credible.  Ex. G at 299. Petitioner has not rebutted this presumption by clear and convincing evidence.  The post-conviction court's credibility determinations are also considered to be questions of fact entitled to a presumption of correctness under the AEDPA, and Petitioner has the burden to overcome the presumption of correctness by clear and convincing evidence.  Consalvo, 664 F.3d at 845.  As noted earlier, "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Id.*

The record supports the post-conviction court's findings and conclusion that Petitioner failed to demonstrate trial counsel rendered ineffective assistance regarding the deposition of the victim.  Because Petitioner has not met the requirements of § 2254(d) in challenging his

convictions and sentences in this ground, habeas relief should be denied on Ground 4.

### Ground 5: Ineffective Assistance of Post-Conviction Counsel

In Petitioner's final claim he contends that post-conviction counsel rendered ineffective assistance in the post-conviction proceeding by failing to meet with him before the hearing and failing to discuss the case with him. ECF No. 33 at 10. Respondent contends that the claim is untimely because it was not presented in a timely-filed petition in this Court, does not relate back to any timely filed claim, and is otherwise not cognizable in this federal habeas proceeding. ECF No. 44 at 82-83, 86.

This claim was not presented to the post-conviction court for determination but was raised for the first time on appeal from denial of post-conviction relief. Ex. I. After full briefing, the state First District Court of Appeal affirmed. Ex. L. When Petitioner filed his initial and amended § 2254 petitions in this court, he did not raise this claim as a ground for habeas relief. He first raised it in this court in the Second Amended petition filed April 15, 2016. ECF No. 21 at 12. Respondent is correct that the claim of ineffective assistance of post-conviction counsel does not relate back or rely on any common core of operative facts involved in Petitioner's timely-filed claims. For that reason, the claim is untimely and should be

dismissed.

Even if the claim were timely, it would not be cognizable in this habeas proceeding. As Petitioner recognizes in his third amended petition, prisoners have no constitutional right to counsel in a collateral attack of their convictions. *See* ECF No. 33 at 68. Petitioner argues that even though he has no constitutional right to appointment of counsel for a post-conviction proceeding, once counsel has been appointed due to a petitioner's illiteracy in the process of law and rule, then that counsel must be held to the same constitutional standards as trial counsel. He urges the court to adopt this as a new rule under the principles of agency. *Id.* at 69.

Petitioner's argument discloses on its face that no clearly established federal law as determined by the Supreme Court requires such a holding. Further, while the Supreme Court held that ineffective assistance of post-conviction counsel can under certain circumstances qualify as cause to overcome the procedural default of a claim of ineffective assistance of <u>trial</u> counsel in <u>Martinez v. Ryan</u>, 566 U.S. 1, 9 (2012),[12] that narrow exception "did not create a free-standing claim for challenging a conviction or

---

[12] The Supreme Court has declined to extend this exception to claims that ineffective assistance of post-conviction counsel qualifies as cause to overcome the default of a claim of ineffective assistance of appellate counsel. *See* <u>Davila v. Davis</u>, 137 S. Ct. 2058, 2065-66 (2017).

sentence based on the alleged ineffective assistance of state post-conviction counsel" in collateral proceedings.  *See* Lambrix v. Sec'y, Fla. Dept. of Corr., 756 F.3d 1262-63 (2012).  "By its own emphatic terms, the Supreme Court's decision in Martinez is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel."  Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013).

Petitioner cannot demonstrate a constitutional error in his claim for relief based on any deficiency in representation by post-conviction counsel in failing to meet with him prior to the evidentiary hearing.  The claim Petitioner raises here is not cognizable in a § 2254 petition and provides no basis for habeas relief.  Accordingly, relief on Ground 5 should be denied.

## Conclusion

Based on the foregoing, Petitioner LaVaughn Weatherly is not entitled to federal habeas relief.  Accordingly, the third amended § 2254 petition (ECF No. 33) should be denied.  Petitioner's motion to supplement the record (ECF No. 48) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the third amended § 2254 petition (ECF No. 33).  It is also **RECOMMENDED** that the Court **DENY** the motion to supplement the record (ECF No. 48).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on July 31, 2017.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**